**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

TRACY PEREZ,                                      )        CASE NO. 5:20-CV-01874-CEH
                                                  )
            Plaintiff,                            )        MAGISTRATE JUDGE
                                                  )        CARMEN E. HENDERSON
    v.                                            )
                                                  )        **MEMORANDUM    OPINION    &**
COMMISSIONER OF SOCIAL SECURITY                   )        **ORDER**
ADMINISTRATION,                                   )
                                                  )
            Defendant,                            )
                                                  )

## I. Introduction

Plaintiff, Tracy Perez ("Perez" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications Supplemental Security Income ("SSI") and Disabled Adult Child Benefits ("DAC"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 20). Because the ALJ followed proper procedures and his findings are supported by substantial evidence, the Court AFFIRMS the Commissioner's final decision denying to Perez SSI and DAC benefits.

## II. Procedural History[1]

---

[1] Claimant previously filed an application for SSI, alleging disability beginning January 1, 2010. (ECF No. 12, PageID #: 138).  The claim was denied initially and upon reconsideration. After a hearing before an administrative law judge ("ALJ"), the ALJ found the following severe impairments: lumbago, lumbar radiculopathy, degenerative joint disease, chronic low back pain, scoliosis, and unequal leg length. (ECF No. 12, PageID #: 140). The ALJ issued an unfavorable decision on March 11, 2014. (ECF No. 12, PageID #: 138). A search of the district court's docket does not indicate that Claimant appealed that decision.

On April 24, 2018, Claimant filed applications for SSI and DAC, alleging a disability onset date of September 1, 2017 (ECF No. 12, PageID #: 300, 304) and claiming she was disabled due to bipolar disorder, anxiety disorder, post-traumatic stress disorder ("PTSD"), severe depression, compulsive anger disorder, and cleft lip (ECF No. 12, PageID #: 312). In her SSI application, Claimant stated "I was not disabled prior to age 22." (ECF No. 12, PageID #: 299). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an ALJ. In preparation for the hearing, Claimant submitted a representative brief amending the onset date and addressing her prior limitations as well as her new impairments. (ECF No. 12, PageID #: 370). Claimant asserted that her "alleged onset date [is June 1, 1998[2]] but, per the suggestion of SSA, the claimant would respectfully move to amend the onset of her Title 2 and 16 claims to 2/2/2018, (age 38 years, 6 months). Exh. 2E." (ECF No. 12, PageID #: 370). The brief also updates her alleged impairments/applicable listings as including: Spine Disorders, (1.04); Depressive Bipolar and Related Disorders (12.04); Trauma and Stressor related Disorders, (12.15); Personality and Impulse Control Disorders aka Anger Control, (12.08); Neurodevelopmental Disorders, (12.11); and Borderline Intellectual Functioning." (ECF No. 12, PageID #:370). "In addition, the claimant suffers from a Cleft Lip, (3 surgeries and speech therapy); PTSD (raped-3 suicide attempts) Irritable Bowel Syndrome, (IBS): Gastroesophageal Reflux Disease, (GERD), Fibromyalgia, Scoliosis, Asthma, Migraines, Depression and Anxiety and Insomnia." (ECF No. 12, PageID #:370). The brief also notes "diagnoses of fibromyalgia, sprain of ligaments of thoracic spine and myalgia, (in claimant's case, systemic muscle pain, pain throughout her whole body, more often the result of an infection, illness or a side effect of a medication)" as well as diagnoses of gastro- esophageal

---

[2] An onset date of June 1, 1998 makes Claimant under the age of 22 at onset.

2

reflux disease with esophagitis and gastritis. (ECF No. 12, PageID #: 371). On August 15, 2019, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 12, PageID #: 108). On August 29, 2019, the ALJ issued a written decision finding that Claimant was not disabled. (ECF No. 12, PageID #: 88). The ALJ's decision became final on June 22, 2020 when the Appeals Council declined further review. (ECF No. 12, PageID #: 77).

On August 24, 2020, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 16 & 19). Claimant asserts the following assignment of error: "Whether the Administrate Law Judge's decision is [supported] by substantial evidence when he fails to properly consider Plaintiff's symptoms pursuant to Social Security Rulings 16-3p and 12-2p." (ECF No. 16 at 1).

## III. Background

### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> The claimant alleged that she was disabled due to a variety of conditions, including bipolar disorder, anxiety, posttraumatic stress disorder, depression, and anger (B1E/2). She reported that she was in pain throughout the day, which limited her activity level (B9E/6). The claimant described having constant pain with little relief with medications (Testimony). She testified that she could walk for only five to ten minutes and sit for ten minutes before changing positions (Testimony). She further claimed that she became short of breath when walking up stairs and changes in weather exacerbated her pulmonary symptoms (Testimony). The claimant said that she previously had three to four headaches per week lasting all day (Testimony). She asserted that she lost her temper easily and she had poor concentration (B9E/6). She stated that she had ongoing anxiety and panic attacks up to four times per month (Testimony). She denied performing any household activities (Testimony). She said she became paranoid around other people (Testimony).

3

(ECF No. 12, PageID #: 97-98).

## B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

> The record reflects that the claimant had a history of several conditions predating the alleged onset date in February 2018, including learning deficits (B1F). While she was in school, an IQ test yielded a score of 71 (B1F/9). She was later diagnosed with dependent personality disorder, posttraumatic stress disorder, episodic mood disorder, depressive disorder, and fibromyalgia (B2F; B10F; B11F).
>
> In a February 2018 pain management exam, the claimant reported pain throughout her body and back (B4F/1). She said it significantly affected her daily activities at times (B4F/1). She had 18 positive tender points but normal motion in her spine, intact strength, and normal coordination (B4F/3). Through the summer and fall, the claimant had ongoing pain management exams, where she reported tender points throughout her body, including her back (B12F/25-56). She had eighteen positive tender points and tenderness in her spine, but normal spinal motion, intact strength, and normal coordination (B12F/25-56). Additionally, she demonstrated euthymic mood and appropriate affect (B12F/25-56). She took various medications, including Tylenol #3 and Norco for severe exacerbations, which was effective in pain relief (B12F/37, 52).
>
> During a December exam, the claimant said she had high anxiety, chronic insomnia, and stable pulmonary conditions (B13F/234). She displayed normal mood and affect with cooperative behavior (B13F/234). She began taking Lexapro (B13F/234). She also took Gabapentin for fibromyalgia (B13F/234). She exhibited normal extremities, sensation, reflexes, and gait (B13F/234).
>
> In February 2019, the claimant had an annual check-up where she said that she had little improvement of her anxiety with Lexapro and the medication caused lightheadedness and agitation (B13F/163). She also had mild chronic obstructive pulmonary disease that was related to smoking (B13F/163). She displayed normal mood, affect, and behavior (B13F/163). She was prescribed Buspirone (B13F/163). The following month, the claimant said Buspirone was ineffective and she was sleeping poorly (B13F/17). However, she noted increased energy (B13F/73). On exam, the claimant was alert and oriented with cooperative behavior, normal

4

mood, and normal affect (B13F/73).

Through early 2019, the claimant had regular pain management exams where she demonstrated eighteen positive tender points and spinal tenderness, which she said occasionally affected her daily activities significantly (B12F/11-23). Despite her tenderness, she exhibited normal spinal motion, strength, and coordination (B12F/11-23). Furthermore, she had euthymic mood, intact orientation, and appropriate affect (B12F/11-23). She discontinued a trial of Tramadol and she resumed use of Norco (B12F/23).

During the summer, the claimant had consistent pain management exams (B12F/2-9). She said that the pain occasionally was so intense as to affect her daily activities, although medication improved her pain (B12F/8). She had eighteen positive tender points and tenderness throughout her spine (B12F/2-9). Nevertheless, the claimant had normal spinal motion, strength, and coordination (B12F/2-12). Moreover, she exhibited normal mood, affect, and orientation (B12F/3-12).

The claimant had a September exam where she reported that she had severe insomnia and she got up in the middle of the night to smoke (B14F/2). Her exam was unremarkable with normal strength, attitude, mood, and affect (B14F/4). She was advised to use melatonin nightly (B14F/4).

(ECF No. 12, PageID #: 98-99).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. Born on August 3, 1979, the claimant had not attained age 22 as of February 2, 2018, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).[3]

2. The claimant has not engaged in substantial gainful activity since February 2, 2018, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: fibromyalgia, borderline intellectual functioning, posttraumatic

---

[3] The ALJ incorrectly stated Claimant's age. However, Claimant's age and pre-qualification for DAC benefits are not at issue in this matter.

stress disorder, mood disorder, personality disorder, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. She must avoid workplace hazards, such as unprotected heights or exposure to dangerous moving machinery. The claimant can perform simple routine tasks that do not involve arbitration, negotiation, or confrontation. She can perform SVP 1-2 work. The claimant cannot direct the work of others or be responsible for the safety or welfare of others. She can do no piece rate work or assembly line work. She can occasionally interact with others.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 3, 1979 and was 18 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 2, 2018, through the date of this decision (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

**V. Law & Analysis**

## A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## B. Disabled Adult Child Benefits

DAC benefits are available "if such child was under a disability ... at the time [s]he attained the age of 18 or if [s]he was not under such a disability ... at such time but was under a disability... at or prior to the time [s]he attained... the age of 22." 42 U.S.C. § 402(d)(1)(G); *see* 20 C.F.R. § 404.350(a)(5). In substance, section 402(d) "provides that a child of an individual entitled to old age or disability insurance benefits is entitled to Child's Insurance Benefits if [s]he is under a disability (as defined by section 223(d) of the Social Security Act) which began before h[er] twenty-second birthday." *Jones v. Sec'y of Health & Human Servs.*, 89–1603, 1990 WL

7

17265, at * 1 n.1 (6th Cir. Feb. 27, 1990); *see Wallin v. Astrue*, No. 12–cv–142, 2013 WL 209183, at * 2 (E.D. Wash. Jan. 17, 2013) (The "claimant must prove her disability began on or before her 22nd birthday.").

### C.  Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant, including a disabled adult child, is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### D.  Discussion

Claimant raises one issue on appeal: whether the ALJ properly considered Claimant's fibromyalgia symptoms pursuant to SSRs 12-2p and 16-3p.

SSR 12-2p establishes special rules for how ALJs evaluate whether fibromyalgia is a

severe impairment at step two. SSR 12-2p, 2012 WL 3104869 at *3. The ruling also provides guidance about how to evaluate a claimant's fibromyalgia at later steps in the disability evaluation process. *Id*. at *4-6. An "ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence" and typically should be reversed. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 729 (6th Cir. 2014) (quoting *Cole v. Astrue*, 661 F.3d 931, 939-40 (6th Cir. 2011)).

Here, the ALJ clearly listed Claimant's fibromyalgia as a severe impairment at step two. Thus, there is no error with respect to the step two analysis. The Court is left with determining whether there is a reversible issue related to the ALJ's evaluation of Claimant's disability in the later steps of the process. Claimant states that "[d]espite finding fibromyalgia a severe impairment, the ALJ [did] not consider nor evaluate the principles set forth in Social Security Ruling 12-2p." (ECF No. 16 at 10). Additionally, Claimant asserts that "the ALJ's reasoning for finding Plaintiff's complaints only partially consistent with the evidence, mainly due to the lack of objective findings, cannot stand as supported by substantial evidence." (ECF No. 16 at 13). As the Court understands Claimant's argument, she agrees with the ALJ's observation that she "had ongoing tenderness throughout her body related to fibromyalgia" but takes issue with the ALJ detracting from her credibility due to "largely stable exams findings, with tenderness but normal strength, coordination and neurological functioning." The Commissioner counters that "the ALJ's decision clearly discussed [Claimant's] complaints of pain, and the largely normal examination findings (Tr. 18, 22-23)." (ECF No. 19 at 7).

As noted above, in the case at bar, the ALJ specifically found that claimant suffered from fibromyalgia, and designated it as a "severe" impairment. A finding that fibromyalgia constitutes a severe impairment, however, does not equate to a finding of disability, nor does a diagnosis of

fibromyalgia corroborate the severity of a claimant's pain symptoms. *See Vance v. Comm'r of Soc. Sec.*, 260 Fed. App'x 801, 806 (6th Cir. 2008) ("A diagnosis of fibromyalgia does not automatically entitle [claimant] Vance to disability benefits; particularly so here, where there is substantial evidence to support the ALJ's determination that [claimant]'s fibromyalgia was either improving, or, at worst, stable."); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("Some people may have a severe case of fibromyalgia as to be totally disabled from working ... but most do not and the question is whether [claimant] is one of the minority."); *accord Foutty v. Comm'r of Soc. Sec.*, No. 5:10 CV 551, 2011 WL 2532915, at *7 (N.D. Ohio June 2, 2011) (Knepp, M.J.), *report and recommendation adopted*, 2011 WL 2532397 (N.D. Ohio June 24, 2011).

SSR 12-2p sets forth not only the necessary requirements for a finding that a claimant has fibromyalgia, but also explains that ALJs must evaluate a person's statements about his or her symptoms and functional limitations by using the two-step method set forth in the regulations and in SSR 96-7p. *Id*. First, the ALJ must determine whether "medical signs and findings that show the person has [a medically determinable impairment(s)] which could reasonably be expected to produce the pain or other symptoms alleged," recognizing that fibromyalgia "satisfies the first step of our two-step process for evaluating symptoms." *Id*. Second, SSR 12-2p specifically allows the ALJ to consider whether "objective medical evidence ... substantiate[s] the person's statements about the intensity, persistence, and functionally limiting effects of symptoms." *Id*. If not, the ALJ is to consider "all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms." *Id*. Therefore, Claimant's suggestion that the ALJ erred by considering the lack of objective evidence

10

corroborating the severity of her alleged pain symptoms is not well taken.

Moreover, this case is distinguishable from the cases upon which Claimant relies. In *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815 (6th Cir. 1988) (*per curiam*), the Sixth Circuit reversed where the ALJ appears to have questioned a claimant's diagnosis of fibrositis based on a lack of objective medical evidence. Here, the ALJ did not question that Claimant's fibromyalgia constituted a severe impairment. Claimant, however, alleged symptoms of an extreme magnitude, testifying that her typical day she spends in bed, does not get out much, and does not help with any cooking or cleaning. (ECF No. 12, PageID #: 123)). She also testified that she could walk for only five to ten minutes and sit for ten minutes before changing positions. (ECF No. 12, PageID #: 123).

A claimant's statements as to pain or other symptoms will not alone establish that she is disabled. *Walters*, 127 F.3d at 531 (citing 20 C.F.R. § 404.1529(a)). The Sixth Circuit has established a two-part test to evaluate complaints of disabling pain when the pain forms a basis of the claimant's disability claim. *Rogers*, 486 F.3d at 247; *see also* SSR 16-3p, 2017 WL 5180304, at *3-*4 (Oct. 25, 2017). First, the ALJ must determine whether there is "an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms." *Id*. (citing 20 C.F.R. § 416.929(a)). The ALJ here determined that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (ECF No. 12, PageID #: 98). Accordingly, the first step is met.

Next, the ALJ must evaluate "the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Rogers*, 486 F.3d at 247. SSR 16-3p lists the factors relevant to the ALJ's determination at this step, which include: the individual's daily activities; the location, duration, frequency and intensity of the individual's

pain or other symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual has received for relief of pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain, and, "[a]ny other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms." SSR 16-3p, 2017 WL 5180304, at *7-*8; *see also Felisky v. Bowen*, 35 F.3d 1027, 1038 (6th Cir. 1994) (citing 20 C.F.R. § 1529(a), (c)). An ALJ is not required to expressly address all the factors listed in SSR 16-3p but should sufficiently articulate his assessment of the evidence to assure the court that he considered all relevant evidence. *Cross v. Commissioner*, 373 F. Supp.2d 724, 733 (N.D. Ohio 2005).

When a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must assess the claimant's symptom testimony "based on a consideration of the entire case record." *Rogers*, 486 F.3d at 247; *see also Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 400 (6th Cir. 2016). To the extent that the ALJ's findings are based on an assessment of the claimant's symptom testimony, those findings are accorded great weight and deference. *Walters*, 127 F.3d at 531.

Claimant "concedes the ALJ offered brief reasoning for discounting [her] subjective complaints." (ECF No. 16 at 14). Nonetheless, Claimant argues that the "ALJ failed to evaluate the factors set forth in SSR 16-3p, such as [Claimant's] activities of daily living, location/duration/frequency/intensity of her pain, precipitating and aggravating factors, [and] effects of her prescribed medication, in violation of SSR 16-3p and 20 C.F.R. § 404.1529." (ECF No. 16 at 14). This Court disagrees.

The ALJ here determined that, although Claimant's severe impairments could reasonably

be expected to cause her symptoms, the statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence of record. (ECF No. 12, PageID #: 26). The ALJ noted that

> [i]n a February 2018 pain management exam, the claimant reported pain throughout her body and back (B4F/1). She said it significantly affected her daily activities at times (B4F/1). She had 18 positive tender points but normal motion in her spine, intact strength, and normal coordination (B4F/3). Through the summer and fall, the claimant had ongoing pain management exams, where she reported tender points throughout her body, including her back (B12F/25-56). She had eighteen positive tender points and tenderness in her spine, but normal spinal motion, intact strength, and normal coordination (B12F/25-56). Additionally, she demonstrated euthymic mood and appropriate affect (B12F/25-56). She took various medications, including Tylenol #3 and Norco for severe exacerbations, which was effective in pain relief (B12F/37, 52)."

(ECF No. 12, PageID #: 26). Later, the ALJ noted that "[t]hrough early 2019, the claimant had regular pain management exams where she demonstrated eighteen positive tender points and spinal tenderness, which she said occasionally affected her daily activities significantly (B12F/11-23)." (ECF No. 12, PageID #: 98). However, "[d]espite her tenderness, [Claimant] exhibited normal spinal motion, strength, and coordination (B12F/11-23)." (ECF No. 12, PageID #: 98). Finally, the ALJ noted that "[d]uring the summer, the claimant had consistent pain management exams (B12F/2-9). She said that the pain occasionally was so intense as to affect her daily activities, although medication improved her pain (B12F/8). She had eighteen positive tender points and tenderness throughout her spine (B12F/2-9). Nevertheless, the claimant had normal spinal motion, strength, and coordination (B12F/2-12). Moreover, she exhibited normal mood, affect, and orientation (B12F/3-12)." (ECF No. 12, PageID #: 99). The ALJ discussed the Claimant's consistent complaints of fibromyalgia pain, anxiety, and insomnia, along with additional diagnosis of dependent personality disorder, posttraumatic stress disorder, episodic

mood disorder, and depressive disorder. (ECF No. 12, PageID #: 98).

The ALJ considered Claimant's daily activities. The ALJ noted that Claimant denied performing any household activities. However, the ALJ found that Claimant's complaints of the intensity, persistence, and limiting effects of her pain were not entirely consistent with the medical evidence and the other evidence in the record, as further demonstrated by the largely normal physical examination findings of normal strength, reflexes, motion, and coordination discussed above. Moreover, Claimant's own statements were conflicting. Although she testified that she spent her time all day either sitting around or laying in bed, she also stated that she could only sit for ten minutes at a time. And Claimant's limitations regarding her ability to grocery shop were not related to her fibromyalgia, but, rather, her panic attacks. (ECF No. 12, PageID #:123).

The ALJ discussed Claimant's treatment modalities. The ALJ noted that Claimant had only engaged in conservative treatment methods for her alleged pain symptoms, as she testified and the record shows she was only prescribed medication for her fibromyalgia, such as Gabapentin, Norco, Neurontin, and Flexeril. The Commissioner correctly pointed out that "the Sixth Circuit has found that when a claimant receives only conservative treatment, that such treatment can weigh against allegations of disabling symptoms." (ECF No.19 at 12-13 (citing *McKenzie v. Comm'r of Soc. Sec.*, 215 F.3d 1327, 2000 WL 687680, at *4 (6th Cir. 2000) ("Plaintiff's complaints of disabling pain are undermined by his non-aggressive treatment."); *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 638–39 (6th Cir. 2016) (ALJ was entitled to consider plaintiff's relatively conservative treatment in analyzing her subjective complaints); *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the

14

claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain.")). Here, Claimant's own statements indicate that her pain is controlled – at least partially – by medication and self-care strategies such as applying heat. (*See* ECF No. 12, PageID #: 98 ("She took various medications, including Tylenol #3 and Norco for severe exacerbations, which was effective in pain relief (B12F/37, 52)"); PageID #: 99 ("She said that the pain occasionally was so intense as to affect her daily activities, although medication improved her pain (B12F/8).)"; PageID #: 117 (Claimant stated she uses heating pad for pain relief)). Accordingly, the ALJ properly found that Claimant's allegations of the severity of her disability conflicted with the fact that her pain was controlled with medication. *Parachini v. Comm'r of Soc. Sec.*, No. 1:11-cv-1670, 2012 WL 1643560, at *11 (N.D. Ohio May 10, 2012) ("[A] medical condition that can be controlled or remedied by prescribed medication, treatment, or surgery is not disabling for purposes of SSI eligibility.").

Having reviewed the medical evidence of Claimant's symptoms, the ALJ determined that Claimant's statements of her symptoms were "only partially consistent with the evidence. The claimant had ongoing tenderness throughout her body related to fibromyalgia. However, pain medications generally controlled her pain." (ECF No. 12, PageID #: 100). The ALJ continued: "She had largely stable exam findings, with tenderness but normal strength, coordination, and neurological functioning. Such facts confirm that the claimant could perform the reduced range of light work described in the residual functional capacity. […] I do not find that the claimant's symptoms are so severe as to prohibit her from performing all basic work activities." (ECF No. 12, PageID #: 100).

The ALJ noted the absence of any observable signs of deterioration of Claimant's muscle strength or mobility by summarizing that she "had largely stable exam findings, with tenderness

but normal strength, coordination, and neurological functioning." (ECF No. 12, PageID #: 100; *see also* PageID #: 98 ("She had eighteen positive tender points and tenderness in her spine, but normal spinal motion, intact strength, and normal coordination (B12F/25-56)."; "She exhibited normal extremities, sensation, reflexes, and gait (B13F/234)."; "Despite her tenderness, she exhibited normal spinal motion, strength, and coordination (B12F/11-23)."); PageID #: 99 ("the claimant had normal spinal motion, strength, and coordination (B12F/2-12)."; "Her exam was unremarkable with normal strength, attitude, mood, and affect (B14F/4).")).

Here, the ALJ did not dismiss a diagnosis of fibromyalgia due to the lack of any objective medical test confirming its presence. The ALJ also did not expect the objective evidence to confirm the presence or severity of Claimant's alleged levels of pain. Instead, given the extremely restricted nature of Claimant's alleged activities, or more accurately the lack thereof, it was not unreasonable for the ALJ to expect that Claimant's prolonged inactivity would manifest itself in an observable deterioration of muscle strength, mobility, or other observable clinical signs.

The Court finds that the ALJ's assessment of Claimant's symptom testimony is supported by substantial evidence in the record. The decision concerning the extent and impact of the limitations resulting from Claimant's symptoms, including fibromyalgia, is supported by substantial evidence and a reasonable application of SSRs 12-2p and 16-3p. Therefore, the Court finds Claimant's assignment of error without merit.

## VI. Conclusion

Because the ALJ followed proper procedures and his findings are supported by substantial evidence, the Court AFFIRMS the Commissioner's final decision denying Perez Supplemental Security Income and Disabled Adult Child Benefits.

16

IT IS SO ORDERED.

DATED: November 12, 2021

_s/Carmen E. Henderson_
Carmen E. Henderson
United States Magistrate Judge